IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| BRIAN KEITH LOUD,<br>TDCJ NO. 01699732,<br><br>        Petitioner,<br><br>v.<br><br>WILLIAM STEPHENS, Director,<br>Texas Department of Criminal<br>Justice, Correctional<br>Institutions Division,<br><br>        Respondent. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§      CIVIL ACTION NO. H-14-0001 |

## MEMORANDUM OPINION AND ORDER

Brian Keith Loud is incarcerated by the Texas Department of Criminal Justice-Correctional Institutions Division pursuant to a state court judgment.  Loud filed a Petition for a Writ of Habeas Corpus By a Person in State Custody Under 28 U.S.C. § 2254 ("Petition") (Docket Entry No. 1).  He has also filed Petitioner's Memorandum in Support of Petition For Writ of Habeas Corpus (§ 2254) ("Brief in Support of Petition") (Docket Entry No. 7).  Respondent Stephens has filed a Motion for Summary Judgment with Brief in Support ("Motion for Summary Judgment") (Docket Entry No. 14), to which Loud responded with Petitioner's Traverse to Director's Motion for Summary Judgment ("Traverse") (Docket Entry No. 15).  Having reviewed the Petition, Brief in Support of Petition, available State Court Records (Docket Entry No. 12),

Stephens's Motion for Summary Judgment, and Loud's Traverse, the court concludes that Loud's Petition does not meet the standards for relief under 28 U.S.C. § 2254. Accordingly, the court will grant Stephens's Motion for Summary Judgment and will deny Loud's Petition.

## I.   Procedural History and Claims

### A.   Procedural History

Loud was convicted of robbery after a jury trial in the 361st District Court of Brazos County, Texas.[1]  The jury assessed the punishment of life imprisonment in the Texas Department of Criminal Justice.[2]

The Tenth District Court of Appeals of Texas affirmed Loud's conviction.[3]  The Texas Court of Criminal Appeals refused Loud's Petition for Discretionary Review.[4]

Loud filed a state Application for a Writ of Habeas Corpus Seeking Relief from Final Felony Conviction Under Code of Criminal

---

[1]Reporter's Record (Volume 2), Docket Entry No. 12-12, p. 76. Page citations to state court trial documents, including the record and state court orders, are to the pagination imprinted by the federal court's electronic filing system at the top and right of the document. Page citations to the federal briefs are to the native page numbers at the bottom of the page in the documents.

[2]Reporter's Record (Volume 3), Docket Entry No. 12-13, p. 70.

[3]Loud v. State, No. 10-11-00063-CR, 2012 WL 414458 (Tex. App.--Waco Feb. 8, 2012, pet. ref'd) (mem. op., not designated for publication), Docket Entry No. 12-2, pp. 1-7.

[4]Notice from Court of Criminal Appeals, Docket Entry No. 12-1, p. 1.

Procedure, Article 11.07 ("State Habeas Application").[5]  The state habeas court recommended that Loud's State Habeas Application be denied.[6]  The Texas Court of Criminal Appeals denied the State Habeas Application on the basis of the findings made by the state trial court.[7]

**B.    Petitioner's Claims**

Loud argues that he is entitled to habeas relief because he received ineffective assistance of trial counsel, the state used racially motivated peremptory strikes, and Loud was subjected to improper prosecutorial comment that violated his right against double jeopardy.  More specifically, Loud argues that:

(1)    Trial counsel "was ineffective for failing to have Mr. Loud examined for mental competency to stand trial;"[8]

(2) The state "used its peremptory challenges to exclude all the African Americans from the jury due to racial reasons;"[9] and

(3)    Trial counsel, during the sentencing phase, "was ineffective for failing to object to the prosecutor's punishment phase argument" and "[t]he calculation argued

---

[5]State Habeas Application, Docket Entry No. 12-20, pp. 5-17.

[6]Order to Transmit Habeas Corpus Record, Findings of Fact and Conclusions of Law, Docket Entry No. 12-20, pp. 44-58.

[7]Action Taken, Docket Entry No. 12-20, p. 2 (consisting of the following one-sentence order: "DENIED WITHOUT WRITTEN ORDER ON FINDINGS OF TRIAL COURT WITHOUT HEARING.").

[8]Petition, Docket Entry No. 1, p. 6.

[9]Id.

by the State violated Mr. Loud's Double Jeopardy rights."[10]

Stephens argues that Loud's claims of ineffective assistance of trial counsel with regard to arguments (1) and (3) are meritless because he fails to meet his burden under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Stephens also argues that Loud does not meet his burden of proof under the ineffective assistance of counsel standard articulated by Strickland v. Washington, 104 S. Ct. 2052 (1984).[11] Stephens further argues that under the AEDPA Loud does not adequately allege a Batson claim because he fails to rebut the presumption given to the findings and conclusions of the Tenth District Court of Appeals of Texas.[12]

---

[10]Id. at 7. Loud argues that during the sentencing phase the prosecutor requested the jury to resentence him for his prior convictions. He alleges that the prosecutor's comment is improper, violating his protection against double jeopardy. He also alleges that the comment is another manifestation of ineffective assistance of trial counsel because his counsel did not object to the comment as a misstatement of law. The comment made was:

> Another thing you could do, total up all the sentences that the Defendant has ever gotten in terms of years in his life. If you totaled it up, it's 61 years of prior sentences. . . . Then what you can do is look at that 61 and then decide how much do we add on for what he did to Cassie Bailey and what he did to Wells Fargo on February 2, 2010.

Reporter's Record (Volume 3), Docket Entry No. 12-13, pp. 60-61.

[11]Motion for Summary Judgment, Docket Entry No. 14, pp. 10-25.

[12]Id. at 25-26.

In response, Loud argues that he has provided ample evidence of his mental incompetency, contending that the state's finding that he was competent to stand trial was based on insufficient evidence.[13]  He also reasserts his argument that the prosecutor's argument subjected him to double jeopardy because it amounted to an authorization of the jury to punish him for offenses for which he has already been punished.[14]

## II.   Standard of Review

### A.   Summary Judgment

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Disputes about material facts are genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Tiblier v. Dlabal, 743 F.3d 1004, 1007 (5th Cir. 2014) (quoting Anderson v. Liberty Lobby, Inc. 106 S. Ct. 2505, 2510 (1986)) (internal quotation marks and citations omitted).  The moving party is entitled to judgment as a matter of law if "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  Bayle v. Allstate Ins. Co., 615 F.3d 350, 358

---

[13]Traverse, Docket Entry No. 15, pp. 1-4.

[14]Id. at 4-6.

-5-

n.28 (5th Cir. 2010) (quoting <u>Celotex Corp. v. Catrett</u>, 106 S. Ct.
2548, 2552 (1986)) (internal quotation marks and citations
omitted).

**B.   Presumptions Applied in Habeas Corpus**

    "The statutory authority of federal courts to issue habeas
corpus relief for persons in state custody is provided by 28 U.S.C.
§ 2254, as amended by the [AEDPA]." <u>Harrington v. Richter</u>, 131
S. Ct. 770, 783 (2011).   Usually, when considering a motion for
summary judgment the court accepts all evidence presented by the
nonmovant as true and draws all justifiable inferences in his
favor.   <u>Tolan v. Cotton</u>, 134 S. Ct. 1861, 1863 (2014) (per curiam)
(quoting <u>Anderson</u>, 106 S. Ct. 2505, 2513).   The amendments to 28
U.S.C. § 2254 contained in the AEDPA, however, alter the way in
which courts consider summary judgment in habeas cases.

    28 U.S.C. § 2254(e)(1) requires federal courts to defer to
state courts in the sense that findings of fact made by state
courts are "presumed to be correct."   This mandate overrides the
ordinary summary judgment rule.   <u>Torres v. Thaler</u>, 395 F. App'x
101, 108 n.17 (5th Cir. 2010).   As a result, the court will accept
any findings made by the state court as correct unless the habeas
petitioner can rebut the presumption of correctness by clear and
convincing evidence.   28 U.S.C. § 2254(e)(1) ("The applicant shall
have the burden of rebutting the presumption of correctness by
clear and convincing evidence.").

-6-

Section 2254(d) creates a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (internal quotation marks and citations omitted). A federal court may not grant a writ of habeas corpus with respect to any claim that was adjudicated on the merits in state court unless the state court proceeding:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is contrary to clearly established Federal law if:

> (1) . . . the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts; or (2) if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Thaler v. Haynes, 130 S. Ct. 1171, 1174 (2010) (quoting Williams v. Taylor, 120 S. Ct. 1495, 1498 (2000)) (internal quotation marks and citations omitted).

### III.   Loud's Claims

A document filed pro se is to be liberally construed. See Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (per curiam)

-7-

(holding that a pro se complaint must be held to a less stringent standard than formal pleadings drafted by lawyers).  Liberally construed, Loud's claims fall under two broad categories: (1) ineffective assistance of trial counsel under Strickland and (2) the Batson challenge during the jury selection phase of the trial.

## A.  Ineffective Assistance of Counsel

### 1.  Applicable Law

As the Supreme Court explained:

> Strickland recognized that the Sixth Amendment's guarantee that in all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence entails that defendants are entitled to be represented by an attorney who meets at least a minimal standard of competence.  Under Strickland, we first determine whether counsel's representation fell below an objective standard of reasonableness.  Then we ask whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Hinton v. Alabama, 134 S. Ct. 1081, 1087-88 (2014) (per curiam) (internal quotation marks and citations omitted).

A federal court reviewing a state court's determination on habeas relief regarding ineffective assistance of trial counsel has a clearly defined and sharply restricted role:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard.  Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.  Under AEDPA, though, it is a necessary premise that the two questions are different.

> For purposes of § 2254(d)(1), an <u>unreasonable</u> application
> of federal law is different from an <u>incorrect</u> application
> of federal law.  A state court must be granted a deference
> and latitude that are not in operation when the case
> involves review under the <u>Strickland</u> standard itself.

<u>Richter</u>, 131 S. Ct. at 785 (internal quotation marks and citations omitted).  The federal court's restricted role prevents the use of an ineffective assistance of counsel claim as a way "to escape rules of waiver and forfeiture and raise issues not presented at trial."  <u>Id.</u> at 788.

The Supreme Court has described the nature of the court's inquiry:

> Under § 2254(d), a habeas court must determine what
> arguments or theories supported or . . . could have
> supported, the state court's decision; and then it must
> ask whether it is possible fairminded jurists could
> disagree that those arguments or theories are inconsistent
> with the holding in a prior decision of this Court.

<u>Id.</u> at 786.  "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable."  <u>Id.</u>  If "fairminded jurists could disagree" on the correctness of the state court's decision," a federal court may not grant relief.  <u>Richter</u>, 131 S. Ct. at 786 (quoting <u>Alvarado</u>, 124 S. Ct. at 2149).

2. <u>Analysis</u>

(a) Claim (1): Trial counsel "was ineffective for
failing to have Mr. Loud examined for mental
competency to stand trial"

Loud argues that his trial counsel was ineffective for failing to have him examined for mental competency to stand trial.[15]

_____

[15]Petition, Docket Entry No. 1, p. 6.

The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. <u>See</u> <u>Drope v. Missouri</u>, 95 S. Ct. 896 (1975). A defendant may not be put to trial unless he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as a factual understanding of the proceedings against him. <u>Ryan v. Gonzales</u>, 133 S. Ct. 696, 703 (2013) (citing <u>Cooper v. Oklahoma</u>, 116 S. Ct. 1373, 1377 (1996)) (internal quotation marks and citations omitted).

When reviewing the actions of trial counsel, the court must be highly deferential of counsel's conduct and presume that counsel's trial strategy fell within the wide range of reasonable professional assistance. <u>Pape v. Thaler</u>, 645 F.3d 281, 291 (5th Cir. 2011) (citing <u>Wilkerson v. Collins</u>, 950 F.2d 1054, 1064 (5th Cir. 1992)). This deference extends to counsel's challenged conduct, including trial strategy and tactical decisions, and is uniform in all phases of the criminal trial. <u>Id.</u> Counsel is not constitutionally ineffective for insufficiently investigating a defendant's mental or psychological condition when there is nothing to put counsel on notice that such a condition exists. <u>Smith v. Quarterman</u>, 515 F.3d 392, 405 (5th Cir. 2008) (citing <u>Miniel v. Cockrell</u>, 339 F.3d 331, 344 (5th Cir. 2003)) (internal quotation marks and citations omitted).

-10-

Loud argues that the failure of his trial counsel to have him examined to determine his fitness to stand trial was objectively unreasonable and denied him due process.[16]  The state habeas court made the following findings relevant to this claim:

> 14.  [The Court of Appeals] considered [Loud]'s arguments that a competency inquiry was necessary because (1) he was on his knees with his hands in the air when the police arrived to investigate the offense, (2) his confession suggested he was easily influenced by others, and (3) he was housed in the medical section of the Brazos County Jail and taking medicine for mental health issues.  [Loud, 2012 WL 414458 at *2.] The Court of Appeals held:
>
> > The record does not support a finding that [[Loud]] was unable to communicate or understand the proceedings.  The record shows that [[Loud]] and his counsel discussed whether [[Loud]] should testify at trial and that [[Loud]] decided against testifying.  The record further shows that [[Loud]] and his counsel discussed trial strategy on a possible defense.  [[Loud]] responded appropriately when questioned by counsel.  The trial court did not abuse its discretion in failing to conduct a sua sponte informal inquiry into [[Loud]]'s competency.  We overrule the first issue.
>
> Id.
>
> 15.  [Loud]'s interactions with his attorney before the trial court did not suggest that [trial counsel] should have questioned his ability to consult with his attorney or lacked a rational understanding of the proceedings against him:
>
> > Immediately before trial, [Loud] acknowledged his decision to reject the State's plea

---

[16]Brief in Support of Petition, Docket Entry No. 7, p. 5.

bargain offer, either when it was first conveyed or when it was about to be withdrawn before trial.  (1 RR 5-7).

[Loud] acknowledged that he understood that the decision whether to testify was solely his decision, he had discussed the issue with his attorney, and he was aware of the consequences of his choice.  (2 RR 157-58).

[Loud] also acknowledged that he decided he made the decision not to testify at punishment, and that he and his attorney discussed possible witnesses for punishment, which included rejecting one witness after discussing the content of his testimony. (3 RR 5-6).

16.  [Loud] confirmed that, in addition to deciding not to testify, he and his attorney discussed potential defense witnesses and strategically determined their use to be too risky:

[TRIAL COUNSEL]: And Judge, if I may, I would like to make representation for the record as well.  We had considered in this case using a defense that perhaps Damian Johnson or perhaps Chris Hall robbed the bank instead of [[Loud]].  After he and I discussed that, I guess I would say that there's compelling evidence that the State would have been able to produce in this case and that we made the decision not to use on[e] of those defenses for fear that that might hinder our chances in the punishment phase of the trial, if there was a punishment phase.  So that's the reason we have chosen not to take that defense, otherwise we might have presented [[Loud]]; is that correct, we talked about what I just said to the judge and you agree that that's what we talked about, correct?

[[LOUD]]: Correct.

(2 RR 158-59).

17.  [Loud] presented mitigating evidence at punishment from employees of the Brazos County jail, who were

-12-

familiar with [Loud] in his year of his confinement, that
demonstrated:

> · [Loud] has been diagnosed with bipolar
> disorder and paranoid schizophrenia, and in
> jail, his medicine was controlled and he
> received counseling services. (3 RR 17-20).

> · His behavior was always respectful, and he
> acted as a peacemaker, telling other inmates
> they should not act that way when being
> disrespectfully [sic] or rude to others.
> (3 RR 28-29, 39-40).

18.    The record does not reflect any outbursts or
manifestation of impairment due to mental illness during
trial, and [Loud] has been on the same medication since
the previous July before [Loud]'s trial in February.
(3 RR 20).

19.    [Loud] filed a <u>pro se</u> motion alleging his statements
to the police should be suppressed because he is an MHMR
patient diagnosed with paranoid schizophrenia who has
been off of his medication for several days.   (CR 37-38,
attached as State's Exhibit F [SHCR at 98-100]).

20.    [Loud] filed two <u>pro se</u> motions requesting new
counsel because his attorney had not adequately assisted
him in making a trial strategy in his defense.   (CR 55-58,
attached as State's Exhibit G [SHCR at 101-05]).

21.    [Trial counsel] provides a credible explanation of
his reasons for determining that requesting a competency
evaluation was unwarranted, listing the factors that went
into his analysis . . .

22.    Counsel's affidavit and the record confirm that
[trial counsel] was well acquainted with [Loud]'s ability
to intelligently communicate with him about both the
facts of the offense and the legal implications of his
decisions about the case.   [Counsel's Affidavit, SHCR at
31-32].

. . .

31.    [Trial counsel]'s assessment of [Loud]'s ability to
consult with him and understand the proceedings was
thorough and encompassed numerous factors allowing him to

reasonably conclude that [Loud]'s mental health history did not require an expert to determine his competency to stand trial. See Moore v. State, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) (holding that evidence of mental impairment alone does not require a competency inquiry where no evidence indicates that a defendant is incapable of consulting with counsel or understanding the proceedings against him); cf. [Ex parte] LaHood, 401 S.W.3d [45,] 51-52 [(Tex. Crim. App. 2013)] (finding trial counsel deficient for not investigating mental health history where signs of instability at trial included multiple outbursts, trouble understanding the proceeding, and a suicide attempt).

32.   [Loud]'s demonstrated ability to understand the proceedings and confer with [counsel] prevent him from affirmatively showing he lacked 'sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding' or a 'rational as well as factual understanding of the proceedings against the person.' Id. at 57.

33.   [Counsel]'s performance was neither deficient nor did it impact the result of [Loud]'s trial. See Strickland, 466 U.S. at 689.[17]

The court's review of the record leads it to conclude that the state habeas court did not apply Strickland unreasonably nor reach a decision based on an unreasonable determination of fact. 28 U.S.C. § 2254(d). Furthermore, Loud does not provide sufficient evidence to overcome the finding made by the state habeas court that he was competent to stand trial. 28 U.S.C. § 2254(e). Accordingly, Loud is not entitled to relief on his claim that his trial counsel was ineffective for failing to have him examined for mental competency to stand trial.

---

[17]Order to Transmit Habeas Corpus Record, Findings of Fact and Conclusions of Law, Docket Entry No. 12-20, pp. 48-54.

-14-

> (b)  Claim (3):  Trial counsel, "was ineffective for failing to object to the prosecutor's punishment phase argument"

Loud argues that his trial counsel was ineffective because his counsel did not object to the argument made by the prosecutor during the sentencing phase that the jury should add all the sentences Loud served for prior offenses and then decide what sentence to add for the present offense.[18]

Prejudice during the sentencing phase turns on whether, absent counsel's errors, there is a reasonable probability that the defendant's sentence would have been significantly less harsh. Dale v. Quarterman, 553 F.3d 876, 880 (5th Cir. 2008) (quoting Spriggs v. Collins, 993 F.2d 85, 88-89 (5th Cir. 1993)) (internal quotation marks and citations omitted).  In evaluating the probability, the court is to consider factors such as the defendant's actual sentence, the potential minimum and maximum sentences that could have been received, the placement of the actual sentence within the ranges of potential sentences, and any relevant mitigating or aggravating circumstances.  Id.

The state habeas court made the following findings and conclusions on whether Loud's trial counsel was ineffective for failing to object to the prosecutor's comment:

> 3.  The State's argument presented more than one way for the jury to assess [Loud's] punishment:

---

[18]Petition, Docket Entry No. 1, p. 7.

. . . [[Loud]] threatens to kill people with shotguns in their face and pistols in their face.

This is why we punish: To ensure public safety, to deter others from committing crimes, providing the rehabilitation of those convicted of violations, and such punishment as may be necessary for those who are likely to commit criminal behavior. [Loud's trial counsel] told you we're not talking about rehabilitation. We're at a minimum 25 year sentence. We're talking about seven felonies. It's not worth the risk. It's not about this defendant anymore, it's about the community. We're through with deterrence, we're dealing with punishment.

I know this is not going to be easy and I know this is something that you are not confronted with every day, and it's not just a number in this range, and so I'm going to give you what I think, my opinion of a good way to write this down and look at it. Here's the range of punishment. 25 years is your minimum. Absolute minimum. To ninety-nine years or life. I heard [Loud's trial counsel] asking you for the minimum in this case for the defendant. I think you can look at it this way. Look at the middle range. It's 62 years.

(3 RR 58-59).

The State then urged that [Loud]'s violence justified punishment "over the middle range and certainly no[where] toward the low end." (3 RR 60). The State also argued that [Loud] was too dangerous to assess a sentence near the minimum, suggesting the jury consider his criminal history and the impact on the victim in this case[.]

. . .

4.   The State's argument included a summary of the punishment evidence. (3 RR 11-13). It also contained a request for law enforcement and directly responded to [Loud]'s argument that the jury should assess a sentence of only the minimum twenty-five years. (3 RR 56).

-16-

5.   [Loud's trial counsel] explains that the reason he did not object was that he did not believe the argument objectionable:

> In his second ground for relief, [[Loud]] complains about a punishment argument made by the State.  He contends the attorney for the State asked that the jury give [[Loud]] more than 61 years, which was the cumulative number of years in prison he had previously been sentenced to serve.  My recollection was that the State was asking for more than a median punishment, and reference 62 being the median punishment between 25 and 99 years.  The State also referenced [[Loud]] previously receiving 61 total years of sentences in this portion of argument.

> [Loud] argues that this is a violation of the Double Jeopardy Clause of the United States Constitution.  I did not believe at that time, nor do I now believe that this was a violation of the Double Jeopardy Clause, and so I did not object.

See Gimbert Affidavit at 2.

6.   [Trial counsel] provided a valid legal reason for deciding not to object to the State's argument based on an accurate understanding of the law.  Id.

7.   "[P]roper jury argument generally falls within one of four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement." Brown v. State, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008).

8.   "Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant . . ." Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999), quoting [Tex. Code Crim. Proc.] art. 37.07 § 3(a).

9.   Sentences for prior convictions are relevant to a jury's consideration of punishment, and their admission

is not substantially outweighed by the danger of unfair
prejudice. Id. at 666-67.

10.  Prior sentences may be used to enhance punishment
without regard to whether the sentence has previously
been used to enhance punishment. See [Tex. Pen. Code]
§ 12.46.

11.  Consideration of prior sentences as a factor in
assessing a sentence for a new offense does not violate
double jeopardy. See Ex parte Broxton, 888 S.W.2d 23, 27
(Tex. Crim. App. 1994) (holding that extraneous offenses,
both adjudicated and unadjudicated, are frequently
considered in sentencing, and their consideration does
not violate the double jeopardy clause because the
punishment is for the charged offense, not for the
extraneous offenses).

12.  [Trial counsel] did not provide deficient
performance for not raising an objection he did not deem
supportable. See Vaughn v. State, 931 S.W.2d 564, 566
(Tex. Crim. App. 1996) (holding that in order to find
merit to an ineffective assistance of counsel claim for
failing to make an objection, it must find the objection
should not have been overruled); see also Mooney v.
State, 817 S.W.2d 693, 698 (Tex. Crim. App. 1991)
(holding that counsel is not required to file futile
motions to be effective).

13.  [Loud] cannot demonstrate harm because the jury was
informed of the proper range of punishment and was given
alternative means to calculate the punishment. See
Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App.
2000) (holding improper argument does not constitute
reversible error, unless in light of the record as a
whole, the argument is extreme of manifestly improper,
violative of a mandatory statute, or injects new facts
harmful to the accused into the trial proceeding).

14.  [Trial counsel's] performance was neither deficient nor
did it impact the result of [Loud's] trial. See Strickland,
466 U.S. at 689.[19]

The court's review of the record leads it to conclude that the

state habeas court did not apply Strickland unreasonably nor reach

---

[19]Order to Transmit Habeas Corpus Record, Findings of Fact and
Conclusions of Law, Docket Entry No. 12-20, pp. 54-58.

a decision based on an unreasonable determination of fact. 28 U.S.C. § 2254(d). Furthermore, Loud does not provide sufficient evidence to overcome the findings made by the state habeas court that his trial counsel's failure to object to the prosecutor's arguments during the sentencing phase was not objectively unreasonable and did not lead to a prejudiced outcome in his sentencing. 28 U.S.C. § 2254(e). Accordingly, Loud is not entitled to relief on his claim that his trial counsel was ineffective for failing to object to the prosecutor's punishment phase argument.

**B.** **Batson** **Claim**

1. Applicable Law

A claim of racial discrimination in jury selection has several elements:

> A [petitioner]'s Batson challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the [petitioner] has made a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race. Second, if the showing is made, the burden shifts to the [respondent] to present a race-neutral explanation for striking the juror in question. Although the [respondent] must present a comprehensible reason, the second step of this process does not demand an explanation that is persuasive, or even plausible; so long as the reason is not inherently discriminatory, it suffices. Third, the court must then determine whether the [petitioner] has carried his burden of proving purposeful discrimination. This final step involves evaluating the persuasiveness of the justification proffered by the [respondent], but the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

-19-

Rice v. Collins, 126 S. Ct. 969, 973-74 (2006) (internal quotation marks and citations omitted).   Moreover, a Batson claim in the context of a federal court's habeas review of a state court's determination further restricts the availability and scope of review:

> Under the [AEDPA, the petitioner] may obtain relief only by showing the [state's] conclusion to be an unreasonable determination of the facts in light of the evidence presented in the [s]tate court proceeding.   Thus we presume the [state] court's factual findings to be sound unless [the petitioner] rebuts the presumption of correctness by clear and convincing evidence.   The standard is demanding but not insatiable . . . deference does not by definition preclude relief.

Miller-El v. Dretke, 125 S. Ct. 2317, 2325 (2005) (holding that a § 2254 habeas petitioner was entitled to habeas relief on the basis of a Batson claim) (internal quotation marks and citations omitted). Consequently, "a federal habeas court can only grant [a] petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the Batson inquiry." Rice, 126 S. Ct. at 974.

    2.   Analysis

Loud argues in his second claim that the state used racially motivated peremptory challenges to strike African-Americans from the venire.[20]   In evaluating his Batson claim, the court must look to the "last reasoned state-court decision." Johnson v. Williams, 133 S. Ct. 1088, 1094 n.1 (2013) (citing Ylst v. Nunnemaker, 111 S. Ct. 2590, 2595 (1991)).   Because Loud did not assert the claim

---

[20]Petition, Docket Entry No. 1, p. 6.

in his State Habeas Application and his Petition for Discretionary
Review was denied by the Texas Court of Criminal Appeals without
substantive reasoning, this court must look to the opinion of the
Tenth District Court of Appeals of Texas.   In reviewing Loud's
Batson claim, that court held:

> In his second issue, Loud argues that the State used its
> peremptory challenges to eliminate all African-Americans
> from the jury and did not give a racially neutral
> explanation for the challenges pursuant to Batson v.
> Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed.2d 69
> (1986).  In Batson, the United States Supreme Court held
> that,  while  a  prosecutor  ordinarily  may  exercise
> peremptory strikes for any reason related to his views
> concerning  the  outcome  of  the  trial,  "the  Equal
> Protection Clause forbids the prosecutor to challenge
> potential jurors solely on account of their race."  Grant
> v. State, 325 S.W.3d 655, 657 (Tex. Crim. App. 2010).  A
> Batson challenge to a peremptory strike consists of three
> steps:  1) the opponent of the strike must establish a
> prima facie showing of racial discrimination; 2) the
> proponent of the strike must articulate a race-neutral
> explanation; and 3) the trial court must decide whether
> the opponent has proven purposeful racial discrimination.
> Id.

> The trial court's ruling in the third step must be
> sustained on appeal unless it is clearly erroneous.  Id.
> Because the trial court's ruling requires an evaluation
> of the credibility and demeanor of prosecutors and venire
> members, and because this evaluation lies within the
> trial court's province, we defer to the trial court in
> the absence of exceptional circumstances.  Id.

> After the parties submitted their peremptory strikes,
> Loud informed the trial court that the State used
> peremptory strikes to remove the two African-American
> venire members within the strike zone.  The trial court
> asked for an explanation.  The State responded that it
> struck Juror 23 because she is a secretary for the Texas
> Department of Criminal Justice and that it struck Juror
> 33 because he was formerly a parole officer for a member
> of Loud's family.

Loud's counsel disputed the State's explanation as to Juror 23.[21]     Loud's counsel stated that in his experience it is defense attorneys who do not want TDCJ employees on the jury.  The State explained that people affiliated with TDCJ sometimes have a close relationship with inmates and that can affect their decision on punishment.  The State further explained that it often strikes employees of TDCJ.  The trial court found the State's explanations for Jurors 23 and 33 to be race neutral.

Loud did not dispute the State's explanation for striking Juror 33.  Loud disagreed with the State's explanation for striking Juror 23, but did not further cross-examine the prosecutor on his motives.  The record shows that Loud was in custody at the Brazos County Jail prior to trial.  Employees of the Brazos County Jail testified on Loud's behalf during the punishment phase of the trial. The trial court's finding that the State offered race neutral explanations for the strikes was not clearly erroneous.  We overrule the second issue.[22]

The court's review of the record leads it to conclude that the Tenth Court of Appeals of Texas did not apply <u>Batson</u> unreasonably nor reach a decision based on an unreasonable determination of fact.  28 U.S.C. § 2254(d).  Furthermore, Loud does not provide sufficient evidence to overcome the findings made by the Tenth Circuit Court of Appeals of Texas that the state offered race-neutral explanations for striking the two African-American members of the venire and that Loud failed to prove purposeful racial discrimination.  28 U.S.C. § 2254(e).  Accordingly, Loud is not entitled to relief on his claim that the state used racially

---

[21]Loud's counsel initially referred to Juror 33 as being employed by TDCJ; however, the record shows that Juror 23 was the TDCJ employee.

[22]<u>Loud</u>, 2012 WL 414458, at *2-3, Docket Entry No. 12-2, pp. 5-6.

motivated peremptory challenges to exclude all African-Americans from the jury.

## IV.    Certificate of Appealability

A Certificate of Appealability ("COA") is necessary before an appeal may proceed, requiring the petitioner to make "a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   The standard requires a showing that reasonable jurists could debate (or agree) that the petition should have been resolved in a different manner or the issues are adequate to deserve encouragement to proceed further.   Slack v. McDaniel, 120 S. Ct. 1595, 1603-04 (2000).   A district court, sua sponte, may deny a COA without further briefing or argument.   Haynes v. Quarterman, 526 F.3d 189, 193-94 (5th Cir. 2008).   For the reasons stated in this Memorandum Opinion and Order, the court has determined that Loud has not made a substantial showing that reasonable jurists could arrive at diverging conclusions, nor has he shown issues that should be encouraged to proceed further. Consequently, the court will deny a COA sua sponte.

## V.    Conclusions and Order

For the reasons explained above, the court concludes that Loud has failed to show that any of the state court proceedings concerning claims (1), (2), and (3) were contrary to, or involved an unreasonable application of clearly established federal law.

-23-

Loud has also failed to show that any of the state court proceedings resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Furthermore, Loud has not shown with clear and convincing evidence that a determination of a factual issue made by any of the state court proceedings was incorrect. The court concludes, therefore, that under 28 U.S.C. § 2254 habeas relief on Loud's claims is not warranted. Accordingly, the court **ORDERS** the following:

1. Respondent Stephens's Motion for Summary Judgment with Brief in Support (Docket Entry No. 14) is **GRANTED**.

2. Loud's Petition for a Writ of Habeas Corpus By a Person in State Custody filed Under 28 U.S.C. § 2254 (Docket Entry No. 1) is **DISMISSED with prejudice**.

3. A Certificate of Appealability is **DENIED**.

**SIGNED** at Houston, Texas, on this the 6th day of June, 2014.

SIM LAKE
UNITED STATES DISTRICT JUDGE

-24-